ADAM REISNER, ESQ. (SBN 204351)
adam@reisnerlaw.com
TESSA KING, ESQ. (SBN 251408)
tessa@reisnerlaw.com
TRAVIS BECK, ESQ. (SBN 334316)
travis@reisnerlaw.com
REISNER & KING LLP
1503 Ventura Blvd, Suite 1260
Sherman Oaks, California 91403
Phone:  (818) 981-0901
Fax:     (818) 981-0902

Attorneys for Plaintiff **EVA VAZQUEZ**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVA VAZQUEZ,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION;<br>EDDIE ROBLES, an individual;<br>ALLAN DOE, an individual;<br>JULIE DOE, an individual;<br>GUS DOE, an individual; and<br>DOES 1 THROUGH 100,<br><br>Defendants. | Case No.: 2:21-cv-02563-PSG-JC<br>Hon. Judge Philip S. Gutierrez, Dept. 6A<br><br>[Los Angeles Superior Court Case No. 21STCV03541]<br><br>**DECLARATION OF ADAM REISNER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**<br><br>[Filed concurrently with Plaintiff's Motion to Remand]<br><br>Date:          May 10, 2021<br>Time:         8:30 a.m.<br>Dept.:        6A<br>Judge:        Hon. Philip S. Gutierrez |

1

**DECLARATION OF ADAM REISNER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**

I, Adam Reisner, hereby declare:

1.    I am the partner attorney at the law offices of Reisner and King LLP, counsel of record for Plaintiff, Eva Vazquez, in the above-entitled action.  I am admitted to practice before this Court.  I have personal knowledge of all matters set forth herein.  If called as a witness to testify to these matters, I could and would testify competently to these matters.

2.    I met and conferred with Defendant Costco Wholesale Corporation ("Costco") on March 16, 2021 to discuss taking the deposition of the PMK after which Defendant Costco agreed to produce based on changed to the PMK categories but gave no alternative dates for availability.

3.    Plaintiff filed her remand motion within thirty days of the removal date, as Defendant Costco filed its Notice of Removal on March 24, 2021 and Plaintiff filed the instant motion on March 29, 2021.

4.    I sent a meet and confer letter to Defense Counsel, Mr. Travis Anderson, on March 24, 2021, which listed out the deficiencies in Defendant's removal. Attached hereto as **Exhibit A** is a true and correct copy of this meet and confer letter.

5.    Then on March 26, 2021, Defense Counsel rejected Plaintiff's remand request. I began to work on the Notice of Motion and Motion to Remand and Request for Attorney Fees and Sanctions. Attached hereto as **Exhibit B** is a true and correct copy of the letter, I received from Defense counsel refusing to remand this case to Superior Court.

6.    In preparation for filing this motion reviewed and summarized parts of Plaintiff Eva Vazquez's Deposition Transcript. Attached hereto as **Exhibit C** is a true and correct copy of excerpts of Ms. Vazquez deposition transcript.

**DECLARATION OF ADAM REISNER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**

7.      In preparation for filing this motion I was given a letter by my client, Ms. Vazquez which she received from Costco on March 23, 2021, that stated Costco wanted to meet with Ms. Vazquez to discuss her leave of absence on April 10, 2021. Attached hereto as **Exhibit D** is a true and correct copy of the letter Ms. Vazquez received on March 23, 2021.

8.      In preparation for filing this motion I researched "Costco Wholesale Corporation" on Westlaw's Business Search, and saw that Costco was listed as incorporated in California. Attached hereto as **Exhibit E** is a true and correct copy of the Business Overview section from Westlaw.

9.      In preparation for filing this motion I researched how much business Costco conducts in California and found on Costco's own website, "Costco.com" it details that Costco has 131 stores in California which is by far the most out of any state, with the next closest being Texas with 33. Attached hereto as **Exhibit F** is a true and correct copy of the Costco.com page that lists "Warehouse By State."

10.     In preparation for filing this motion, I verified that Defendant Costco was served on February 1, 2021. I also verified that Individual Defendant, Eddie Robles was served on February 3, 2021. Attached hereto as **Exhibit G** is a true and correct copy of the Proof of Service of Summons for Defendant Eddie Robles.

11.     Ms. Vazquez deposition was unilaterally noticed on February 10, 2021 for the deposition to occur on February 24, 2021. Attached hereto as **Exhibit H** is a true and correct copy of Vazquez's Deposition Notice.

12.     To date, Defendants have not agreed to remand the matter, requiring Plaintiff to have to file this motion on March 29, 2021.

13.     Here, I spent 12 hours in the preparation of this motion and intend to spend 3 more hours composing a reply to Defendants' Opposition papers. My hourly rate is $650.00 per hour.

3

**DECLARATION OF ADAM REISNER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**

14.    Therefore, I request attorneys' fees for 15 hours of work at $650 an hour for $9,750.00 in attorneys' fees.

15.    I also spent 2.5 hours in preparing Plaintiff's meet and confer letter in this matter and in meet and confer efforts with defense counsel with an hourly rate of $650 for an additional amount of $1,625 in attorneys' fees.

16.    My reasonable hourly rate is $650.00 an hour as is commensurate with my experience as well as the reasonable rates of other plaintiff's attorneys with equivalent skill and experience. Some of my past experience, from earliest to latest, with my hourly rate being upheld as reasonable includes:

a.    On March 6, 2020, I was upheld at my current hourly rate of $650.00 in the Orange County Superior Court case Sean Walsh v. Mapperatri USA, LLC, 30-2019-01046748.

b.    I was upheld in the Kramer v. LAUSD case on a motion for attorney's fees following Jury trial, by Judge Rita Miller in the amount of $625.00 per hour.

c.    In 2017, I along with my partner Tessa King arbitrated a three-week employment case in Los Angeles County, Kirch v. Macy's, et. al. The Claimant we represented in the matter was a Macy's employee and we obtained an Award in her favor. We prepared a motion for attorneys' fees at my hourly rate of $625.00 an hour and are awaiting the Arbitrator's ruling on the motion.

d.    On or about April 19, 2017, my hourly rate of $625 was upheld as reasonable by Hon. Judge Barbara M. Scheper in a Default Prove-Up Judgment in the case De Kauwe v. North American Chemical Services, et. al., Case No. BC548079. The Court also upheld a 2.0 times loadstar multiple, which caused my effective hourly rate to be upheld at $1,250.

**DECLARATION OF ADAM REISNER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**

e.   On or about January 18, 2017, my hourly rate of $625 was upheld reasonable by Hon. Judge Mel Red Recana for attorney's fees in a Default Prove-Up Judgment in the case Gutierrez v. Ambriz, Case No. BC599651. As part of that case, the Court also upheld a 2.0 times loadstar multiple, which caused my effective hourly rate to be upheld at $1,250.

f.   In or around June 23, 2016, my then-hourly rate of $600 was upheld as reasonable by Hon. Judge Deirdre Hill in a motion to enforce a settlement agreement in the case Villalobos v. Select Real Estate Management, et. al., Case No. BC 552066.

g.   This is not an exhaustive account of my attorney fees awards or where I have been held reasonable over the last 21 years.

17.   I declare under penalty of perjury under the laws of the State of California and under the laws of the United States of America that the foregoing is true and correct.

Executed: March 31, 2021                    By: _____

Adam Reisner
Attorney for Plaintiff,
Eva Vazquez

5

**DECLARATION OF ADAM REISNER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND**

# EXHIBIT A

March 24, 2021

*Sent Via Email: TAnderson@sheppardmullin.com*

Travis Anderson, Esq.
**SHEPPARD MULLIN RICHTER AND HAMPTON LLP**
12275 El Camino Real, Suite 100
San Diego, California 92130

        ***Re:***      ***<u>Vazquez v. Costco Wholesale Corporation et al.; Meet and Confer re Remand</u>***

Dear Mr. Anderson:

We are in receipt of your Notice of Removal to Federal Court. Please allow this letter to initiate our good faith attempts to meet and confer regarding the deficiencies within your Notice of Removal, and to request that Defendants stipulate to remand this matter back to State Court.

Foremost, we believe your papers are severely late and your claimed justification for the delay is meritless. Notwithstanding this incurable deficiency, we understand your clients removed the instant matter based on alleged diversity grounds; however, please be advised that removal was improper based upon the following:

1. <u>Diversity Citizenship Does Not Exist As Defendants Allan Mar, Eddie Robles, Julie Doe, and Gus Doe Are California Citizens and Are Not A Sham Defendant</u>

A federal court has diversity jurisdiction if the amount in controversy exceeds $75,000 and the parties to the action are citizens of different states. See 28 U.S.C. § 1332(a). Any instance of common citizenship between a plaintiff and defendant "deprives the district court of original diversity jurisdiction over the entire action." <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, (2005) 545 U.S. 546, 553. To defeat diversity citizenship, the party who invoked the federal court's removal jurisdiction is forced to prove by a preponderance of evidence whatever is necessary to support their petition. See <u>Gaus v. Miles, Inc.</u> (9th Cir. 1992) 980 F.2d 564, 566; see also <u>B., Inc. v. Miller Brewing Co.</u> (5th Cir. 1981) 663 F.2d 545, 549. Further, removal statutes are "strictly construe[d] against removal," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." <u>Gaus v. Miles, Inc.</u>, supra, 980 F.2d at 566; *see also* <u>Moore-Thomas v. Alaska Airlines, Inc.</u>,553 F.3d 1241, 1244 (9th Cir. 2009) ("[A]ny doubt about the right of removal requires resolution in favor of remand."). In the instant matter, Defendants are thereby required to prove diversity citizenship in the face of an immense presumption thereagainst.

As you further know, to defeat diversity citizenship, "[t]he defendant must demonstrate

Vazquez v. Costco Wholesale Corporation et al.
February 1, 2019
Page 2

that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." Travis v. Irby, (5th Cir. 2003) 326 F.3d 644, 648; see also Good v. Prudential Ins. Co. of Am. (N.D. Cal. 1998), 5 F.Supp.2d 804, 807. Further, "[r]emand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency." Padilla v. AT&T Corp., (C.D. Cal. 2009), 697 F.Supp.2d 1156, 1159 (brackets in original); Macey v. Allstate Prop. & Cas. Ins. Co., (N.D. Cal. 2002), 220 F.Supp.2d 1116, 1117. "Because the court must resolve all doubts against removal, we employ a presumption against fraudulent joinder." Macey, supra, 220 F.Supp.2d at 1117-1118 (citing Gaus, supra, 980 F.2d 564 at 566). "Merely a 'glimmer of hope' that plaintiff can establish [a] claim is sufficient to preclude application of [the] fraudulent joinder doctrine." Gonzalez v. J.S. Paluch Co., No. 12-08696-DDP (FMOx), 2013 WL 100210, at 4 (C.D. Cal. Jan. 7, 2013) (internal quotations omitted) (brackets in original).

Here, your removal papers admit the individual defendants Allan Mar, Eddie Robles, Julie Doe, and Gus Doe are all California citizens and that testimony has already been taken of Ms. Vazquez where she identifies specific harassing comments being made.[1] While your papers argue they are each "sham" defendants, this is an untenable positon based on her testimony and the allegations contained in her complaint. Even one comment would be sufficient for hostile work environment claims as our California Legislature declared its intent in regard to FEHA harassment specifically identified in Cal. Gov. Code §12923, including that a single incident of harassing conduct is enough to plead, "(b) A single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment..."

Here, Plaintiff's complaint and her testimony both evidence a number of instances of disability based comments that clearly meet the definition for hostile work environment.

Indeed, under the Ninth Circuit' approach to this doctrine, "a non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor the plaintiff could not possible recover against the party whose joinder is questioned." Padilla v. AT & T Corp., 679 F. Supp 2d 1156,1158 (C.D. Cal. 2009) (citing Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1426 (9th Cir. 1989)). You will be unable to demonstrate these defendants to be a "sham."

Indeed, the Complaint explicitly alleges facts of severe and pervasive harassment against Defendants, including biased personnel management decisions, derisive comments, and abusive conduct. Firstly, it is alleged at paragraph 14(b), page 4 that:

*"Defendant Gus Doe began to purposefully ignore and distance himself from Plaintiff as well as leer and stare at her"*

In addition, Plaintiff alleges the following against Defendants,:

---

[1] It is noteworthy to mention that Plaintiff was deprived the right to make changes to her deposition transcript and Counsel was denied the opportunity to examine the witness, making the use of her testimony improper for these proceedings.

Vazquez v. Costco Wholesale Corporation et al.
February 1, 2019
Page 3

At paragraph 14(h), page 5:

> "*Defendant Gus Doe angrily questioned her restrictions and stated: "Why can't you sweep? You have restrictions for sweeping?*

At paragraph 14(i), page 5:

> "*Defendant Robles who states she needed a special license, which is untrue. Plaintiff was aware of at least three individuals working in Optical without a license.*"

At paragraph 14(j), page 5:

> "*On or about February 15, 2020, Defendants called Plaintiff into a meeting and unlawfully tried to coerce Plaintiff to remove her restrictions by her doctor, insisting she be 100% healed to work her job*"

At paragraph 14(k), page 5:

> "*Defendant Robles threateningly told Plaintiff, "You need to take this paper to the doctor and show him this paper, if you want to work, you need to have the restrictions removed. [It] is not fair for other people to do their day-to-day tasks and that you need assistance or are exempt from certain tasks due to your restrictions.*"

At paragraph 14(l), page 5:

> "*Defendant Allan Doe followed up by stating, "We have no job for you because you have restrictions. Go have your restrictions removed.*"

At paragraph 14(m-n), page 5:

> "*On or about March 2, 2020, Plaintiff took protected legal action by wearing a mask and gloves at work in light of the COVID-19 pandemic, which was recommended by her doctor due to her weak immune system. Defendant Gus Doe berated Plaintiff for wearing a mask and gloves by stating, "Are you sick? No. Then you can't wear a mask. The only people allowed to wear a mask are the sick people." Defendant Gus Doe refused to allow Plaintiff to wear the mask in response to the Plaintiff stating, "I need it for my health, my defenses are slow.*"

In addition, Defendants are implicated throughout the Complaint in the harassment against Plaintiff based on her disability. Since being given work restrictions, Ms. Vazquez alleges Defendant Gus Doe would leer and ignore Plaintiff, and would question her sweeping restrictions stating "Why can't you sweep? You have restrictions for sweeping?"

In addition, Ms. Vazquez alleges Defendant Gus Doe prohibited her from taking her legally protected action of wearing a mask and gloves during the COVID-19 pandemic by stating, "Are you sick? No. Then you can't wear a mask. The only people allowed to wear a

Vazquez v. Costco Wholesale Corporation et al.
February 1, 2019
Page 4

mask are the sick people." Ms. Vazquez further alleges that despite her requesting an accommodation, "I need it for my health, my defenses are slow," Defendant Gus Doe refused to allow her to wear the mask, which is a biased personal management decision designed to harass.

Furthermore, Defendants Robles, Mar, and Julie Doe met with Plaintiff and tried to unlawfully force Plaintiff to remove her restrictions. Indeed, Defendant Robles threated, "[y]ou need to take this paper to the doctor and show him this paper, if you want to work, you need to have the restrictions removed. [It] is not fair for other people to do their day-to-day tasks and that you need assistance or are exempt from certain tasks due to your restrictions."

Similarly Defendant Mar demonstrated his disdain for Plaintiff's disabilities that despite Costco's ability to accommodate Plaintiff as it had been that, Mar stated, "[w]e have not job for you because you have your restrictions. Go have your restrictions removed."

While the above is more than sufficient, Plaintiff has numerous grounds on which to amend her Complaint to add additional facts against Defendants Allan Mar, Eddie Robles, Gus Doe, and Julie Doe bolstering the fact that each is not a sham defendant. Furthermore, upon learning more about another supervisor Brenda Doe, Plaintiff will seek to add Brenda Doe, upon which additional facts of harassment will be added including but not limited to Brenda Doe stating, "What the fuck are you doing, stop picking he smallest fucking broom," despite having knowledge of Plaintiff's disabilities and restrictions.

2. Defendant Cannot Prove the Amount In Controversy Exceeds $75,000.00

Defendant has also failed to produce sufficient evidence that the value of the instant action exceeds $75,000.00, a prerequisite for diversity. See Indus. Tectonics, Inc. v. Aero Alloy, (9th Cir. 1990) 912 F.2d 1090, 1094. Indeed, conclusory allegations as to the amount in controversy in a notice of removal are insufficient. Williams v. Best Buy Co., Inc., (11th Cir. 2001)269 F.3d 1316, 1319; Gaus v. Miles, Inc., supra, 980 F.2d at 566. Further, the amount in controversy is determined from the allegations or prayer of the complaint. See St. Paul Mercury Indem. Co. v. Red Cab Co., (1938), 303 U.S. 283, 289. Here, Plaintiff's Complaint contains absolutely no figures or ascertainable amounts to suggest that the amount in controversy exceeds $75,000. Though Defendant speculates as to the nature of Plaintiff's damages, Defendant lacks the necessary factual basis for this conjecture to overcome the burdensome presumption against removal.

Vazquez v. Costco Wholesale Corporation et al.
February 1, 2019
Page 5

     We believe this to be a poorly drafted, frivolous and clearly late removal papers, designed to delay our taking depositions and discovery in general.

     For the above listed reasons, please agree to stipulate to remand by Friday March, 26 2021. If we do not hear from you by then, we will be forced to bring a motion to remand and request attorneys' fees and sanctions. Please feel free to contact me to discuss further.

Very truly yours,
**REISNER & KING LLP**

ADAM REISNER

# EXHIBIT B

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
858.720.8900 main
858.509.3691 fax
www.sheppardmullin.com

858.720.8940 direct
tanderson@sheppardmullin.com

File Number: 0HKS-330208

March 26, 2021

**VIA E-MAIL ONLY**

Adam Reisner
Reisner & King LLP
15303 Ventura Blvd., Suite 1260
Sherman Oaks, CA 91403

E-Mail: adam@reisnerlaw.com

Re:   *Eva Vazquez v. Costco Wholesale Corporation, et al.* – Response to Meet and Confer

Dear Mr. Reisner:

I write in response to your letter dated March 24, 2021, which demanded that Defendant Costco Wholesale Corporation ("Costco") agree by close of business today that the case be remanded. For the reasons set forth in our removal papers, Costco declines to Plaintiff's remand demand. The assertions in your letter do not meaningfully address the bases for removal established in the papers. If you have additional, material grounds or authority for your position, please let us know.

Best regards,

Travis J. Anderson
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:4837-6072-4194.1
Cc:   Tessa King, Esq. (tessa@reisnerlaw.com)
      Travis Beck, Esq. (travis@reisnerlaw.com)

# EXHIBIT C

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

EVA VAZQUEZ,

           Plaintiff,

    v.                                    Case No. 21STCV03541

COSTCO WHOLESALE CORPORATION; EDDIE
ROBLES, an individual; ALLAN DOE,
an individual; JULIE DOE, an
individual; GUS DOE, an individual;
and DOES 1 through 100,

           Defendants.

_____


VIDEO RECORDED DEPOSITION OF EVA VAZQUEZ

APPEARING REMOTELY FROM

La Mirada, California

VOLUME I (Pages 1 through 165)

February 24, 2021

9:03 a.m.


STENOGRAPHICALLY REPORTED BY:
CHRISTINE A. SOUFFRONT
CSR No. 12344, RPR
APPEARING REMOTELY FROM SAN DIEGO COUNTY, CALIFORNIA

BY MR. ANDERSON:

Q.   So your pay went -- went down?

A.   Correct.  It went down.

Q.   When you were promoted from front-end assistant to cashier, did your pay go up?

A.   Correct.

Q.   And you worked as a cashier for another three to four years?

A.   Approximately -- approximately two to four years, yes.

Q.   What was the next position you worked?

A.   I injured my back in 2013.  I was out for two years, and when I returned they put me in this position folding clothing.

Q.   What is the title of the position?

A.   Front end.

Q.   Front-end assistant?

A.   Correct.

Q.   And the only duty you performed was folding clothes?

A.   When I returned in 2015, approximately around June or July -- I don't recall very well -- I returned with restrictions, and I already passed the problem that I had in court previously.

All the managers would ignore me as if I didn't

exist like I was a ghost.  I'd come in, and they'd give me my schedule.  I started working from 12:30 until 9:00.

Q.   So it's really important that you listen to my specific question and just answer that question, and then I'll follow up with additional questions; otherwise, this process takes a whole lot longer.  And I know you're doing your best.  I'm just --

So my specific question was when you returned to work as a front-end assistant, was your only job duty to fold clothes?

A.   That's why I was answering because I have to explain my answer.

Q.   Okay.  Well, I guess answer it as best you can.

A.   Sorry.  My dogs.

MR. ANDERSON:  My dogs are barking too, figuratively, but that's my fault.  I'm standing.

THE WITNESS:  I'm sorry.

MR. ANDERSON:  No problem.

THE WITNESS:  They gave me a position -- qualified position as front end, but it doesn't specify that. Okay.  For one year it was almost as if I was a ghost because they wouldn't tell me anything.  They wouldn't tell me when I had to take a break.  They wouldn't tell me anything.  They were ignoring me.

Eva Vázquez Volume I
February 24, 2021

BY MR. ANDERSON:

Q.    For how long did that last?

A.    Approximately, like, one year.

Q.    So for one year no supervisor or manager would speak to you or tell you what to do?

A.    I would show up at 12 midday, and I would report to my supervisor.  He would just tell me "Go to the clothing," and that's it.

Q.    Okay.  So just to confirm, for a year you were told to just fold clothes, correct?

MR. BECK:  Objection.  Argumentative.

THE WITNESS:  Correct.

BY MR. ANDERSON:

Q.    Did you ask to do any different duties during that one-year period?

A.    I didn't say anything because I was sad.  I was -- I felt ignored as if I were a -- I felt at work -- like we say -- us Latinos say, like, the ugly duckling, like, as if I were doing bad things.  And they were ignoring me, and I felt bad as if they were -- I felt like as if it had been my fault that I injured my back.

Q.    Is there someone in particular that you remember making you feel that way during that one-year period?

STATE OF CALIFORNIA          )
                             :  SS.
COUNTY OF SAN DIEGO          )


     I, CHRISTINE A. SOUFFRONT, Certified Shorthand Reporter licensed in the State of California, License No. 12344, Registered Professional Reporter, hereby certify that prior to being examined, the witness in the foregoing proceedings was by me first duly sworn; that said proceedings were remotely taken down by me stenographically to the best of my ability and thereafter transcribed via computer-aided transcription under my direction and supervision; that the foregoing is a full, complete, and true record of said proceeding.

     I further certify that I am not of counsel or attorney for either or any of the parties in said proceedings, nor in any way interested in the outcome thereof.

     The dismantling, unsealing, or unbinding of the original transcript will render the reporter's certificate null and void.

     In witness whereof, I have hereunto set my hand this 4th day of March, 2021.

_____
CHRISTINE A. SOUFFRONT
RPR, CSR No. 12344

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OFLOS ANGELES

EVA VAZQUEZ,

            Plaintiff,

      vs.                              Case No.   21STCV03541

COSTCO WHOLESALE
CORPORATION, et al.,

            Defendants.

_____

VIDEOTAPED DEPOSITION OF

EVA VAZQUEZ

VOLUME II

APPEARING REMOTELY FROM LOS ANGELES COUNTY, CALIFORNIA

February 25, 2021

2:07 p.m.

REPORTED BY:

Angela M. Schubert

CSR No. 12027, CSR

APPEARING REMOTELY FROM ORANGE COUNTY, CALIFORNIA

Eva Vazquez Volume II
February 25, 2021

Q. You remember it was March 2. That's pretty specific. But you're not sure if it's 2018 or 2019.

Correct?

A. Correct.

Q. What did you say during that conversation?

A. That day I was working. I was working. And at the moment that we had to open the door, I put my mask on, my gloves and my glasses to work at the door, so I was working there at the door and Mr. Gustavo approached me and he said to me what are you doing and I said to him, well, I'm here. He said, Are you ill. I said no. He said, Do you have the flu. I said no. So why do you have a mask on; so I told him the thing with the Covid is going on, and he says to me, well, if you're not ill and you don't have the flu, then you have to remove the mask.

Q. And then what happened?

A. I told him that soon I was going to be having my back surgery and then I needed to protect myself.

Q. And what did he say?

A. That if I wasn't sick with the flu that I had to remove it.

Q. Anything else that was said between you two?

A. No.

Q. Did you then remove it after he said if you're

Eva Vazquez Volume II
February 25, 2021

not sick you need to?

A. Yes.

Q. At that time, did you have a surgery scheduled?

A. Not exactly. We were -- we were in the process to date.

Q. Did you eventually have that surgery?

A. Yes.

Q. When?

A. June 15th.

Q. Of what year? Was it the same year that you had that conversation with Gustavo?

A. Yes. I don't know if Gustavo was '19 or '20.

Q. Yeah. So for what it's worth, Covid started here in the United States sometime in 2020 or at least the latest and greatest. Does that refresh your recollection? Does that refresh your recollection that you're talking about 2020 and not 2018 or 2019 or you're not sure?

A. I'm not certain. It would be better for me to say '19, '20 so as not to --

Q. Now going back to this conversation with Gustavo, did Gustavo say anything? Did he raise his voice to you?

A. He was very like cutting. He said to me --

and when he was leaving me, right, I asked him, You don't believe in this.

Q.   And what did he say?

A.   He said no.

Q.   And you were asking him if he believed in Covid?

A.   Yes.

Q.   Now you said he was cutting.  What do you mean?

A.   Remove it now, the masks.  Like he's saying remove it now.

Q.   So he was being very direct?

THE INTERPRETER:  The interpreter could have said he was being blunt.

MR. ANDERSON:  Okay.

BY MR. ANDERSON:

Q.   Do you feel he was being very direct or blunt?

A.   Yes.

Q.   But he wasn't shouting at you?

A.   No.  He was like direct and angry because I had the mask on.

Q.   How was he angry?  How do you know he was angry?

MR. BECK:  Objection.  Calls for speculation.

THE WITNESS:  Because of his attitude.  You

understand me?

BY MR. ANDERSON:

Q.   No.  I don't.  What do you mean his attitude?

A.   He didn't yell at me.  He didn't raise his voice but his voice was different.

Q.   Did he say anything insulting to you?

A.   No.

Q.   Did he say anything about your disability?

A.   Not that time but we did have another conversation.  Now I do remember that we had another conversation.

Q.   We'll get to that in a moment.  Was anybody else listening or participating in that communication that you had with Gustavo relating to the mask and the gloves?

A.   My coworker there, she was on the other side of the door but I don't remember who it was and I don't know if she was listening.  I don't remember.

Q.   Do you remember anything more specific about her, her age, what she looked like?

MR. BECK:  Objection.  Compound.

THE WITNESS:  I don't remember but what I do remember is when I went to the direction of the break room walking they saw me now without my mask without my glasses and a supervisor asked me what had happened

Eva Vazquez Volume II
February 25, 2021

mocked you?

MR. BECK:  Objection.  Calls for speculation. Vague and ambiguous.

THE WITNESS:  No.

BY MR. ANDERSON:

Q.  Has he ever yelled at you?

A.  No.

Q.  Has he done anything that bothered you relating to your disability?

A.  Like I'm sad.  I didn't feel safe because like I don't know when -- when I brought the new note from the doctor for the disability saying that I couldn't sleep, all managers -- well, not all managers but a majority of managers changed their attitude with me because I couldn't sleep.

Q.  Okay.  So my question is very specific.  I'm asking about Gustavo.  Do you remember anything Gustavo specifically did that bothered you relating to your disability?

A.  That's why I told you about this because this -- Mr. Gustavo he was no longer talking to me.

MR. BECK:  Counselor, sorry.  Real quick. We've been going an hour.  Can we take a quick five minute break?  I need to use the restroom.

MR. ANDERSON:  I'm in the middle of a line of

Eva Vazquez Volume II
February 25, 2021

THE WITNESS:  He would come by.  He would not greet me and I was feeling really bad.  I felt sad. Sometimes I felt like crying because I felt ignored.

BY MR. ANDERSON:

Q.  When was this?

A.  It was more like '18 or '20.  No.  '19.

Q.  At some point, it stopped and he stopped ignoring you?

A.  I didn't understand.

Q.  You didn't understand my question?

A.  No.

Q.  Are you saying that from that point forward he ignored you sometime in 2018, 2019.  He just continued to ignore you?

A.  Yes.

Q.  Was this before or after the March 2nd conversation you had with Gustavo about your mask?

A.  That was a little bit before when he had realized I had taken the note with the restrictions for the sweeping.

Q.  Okay.  So he started ignoring you before the conversation about the mask?

MR. BECK:  Objection.  Asked and answered.

THE WITNESS:  Correct.

///

Eva Vazquez Volume II
February 25, 2021

Media Unit No. 3.  We are back on the record at 3:41 p.m.

BY MR. ANDERSON:

Q.  Before we took a break, you were thinking about whether there was anything else Julie from HR said to you during this additional conversation.

Did you think of anything else?

A.  I had a meeting with Miss Julie concerning my disability.  She told me that I needed to go to my doctor and to show it to him.  I said, Do I need to go to my doctor and she answered yesterday.  And I asked her once again, Do I need to go to the doctor since the disability is here and she told me that I needed to go to my doctor so he could remove the disability in case I wanted to work.  Because if I did not go to my doctor, I would have to call -- what do they call it -- corporate, corporate, corporate and we're going to have to have a meeting concerning that paper.

Q.  Did this conversation occur in the meeting that you first described with Allan and Jessica or was this in this next meeting where you came in to work to talk and you brought the note?

MR. BECK:  Objection.  Compound.

THE WITNESS:  I had a name.  Was Allan Jessica in corporate.

MR. ANDERSON:  Okay.

BY MR. ANDERSON:

Q.  So now you remember additional things Julie said during that meeting you were previously describing to me.

Correct?

A.  Yes.

Q.  Was Julie telling you that with the work restrictions you had you would not be able to perform the job?

A.  Yes.

Q.  And that unless those work restrictions change you wouldn't be able to do the job and they would need to speak with corporate?

MR. BECK:  Objection.  Argumentative.

THE WITNESS:  Correct.

BY MR. ANDERSON:

Q.  When Julie was saying these things to you, was she calm?

MR. BECK:  Objection.  Calls for speculation. Vague and ambiguous.

THE WITNESS:  Yes.

BY MR. ANDERSON:

Q.  Was she polite?

MR. BECK:  Objection.  Calls for speculation.

Eva Vazquez Volume II
February 25, 2021

Q. Describe for me wrapping? What does wrapping mean?

A. The person in charge of wrapping; for example, if there's an open bag of underwear, you repackage it and you put it back into the store so that it can be sold. For example, the cereal, if the cereal's open, not the bag, but if the box is open, I closed the bag. I closed the bag and I put them -- there's two of them. I close the box and there's two of them and I put them together and I put it back in the store.

Q. So are you walking around the warehouse looking at the product?

A. I did do it. But at night, those that clean the store they go around and find everything that's opened or disorganized and they put it in a basket for me.

Q. And do you have to bend down to pull it out of the basket?

A. Not all of them.

Q. Do you have to twist, move your body, as you take things out of the basket and rewrap?

A. No. I already know my condition and I already found a way to work my department and -- so as to not injure myself. It's easier for me. So it's easier for me.

Eva Vazquez Volume II
February 25, 2021

p.m.

BY MR. ANDERSON:

Q.   Now let's talk about Eddie Robles.   In the last two years, have you talked to Eddie Robles about your disability?

A.   Yes.

Q.   How many times?

A.   Like four.

Q.   Do you remember when the first one was?

A.   I don't remember.   I just remember the last one.

Q.   Okay.   Let's start with what you do remember about the first one.   Do you remember what you said?

A.   Remember the meeting that we had with Miss Julie and I?

Q.   We already talked -- are you saying Eddie was there too?

A.   Yes.   I had already mentioned that to you before.

Q.   All right.   What did Eddie say during that meeting?

A.   He told me about my restrictions.   That I needed to go to the doctor.   That I'm going to have to change my restrictions if I wanted to continue working.

Q.   Okay.   So in that last meeting that you had

Eva Vazquez Volume II
February 25, 2021

before going out on the leave?

A.   Yes.

Q.   And so he talked to you about the restrictions in your doctor's note.

Correct?

A.   Correct.

Q.   He said that because of those restrictions you were not able to do the job.

Correct?

A.   Correct.

Q.   He said that if you wanted to your restrictions would need to change for you to be able to do the job again.

Correct?

A.   Correct.

Q.   Did he say anything else that you remember during this meeting?

A.   I don't know if it was in the same meeting but it was another one because he was telling me that it wasn't fair that my other coworker should have to do my work because I had restrictions and that I couldn't lift heavy boxes and that the minimum was 50 pounds and I answered and they showed us videos and they had given us like these fliers that if we can't do heavy lifting that we need extra help so I was requesting help

because they had me working as a stocker having had this broken screw.

Q.  Wait a minute.  We're getting far afield I think from my question.  Let's -- first, have you told me everything you remember about that other meeting that Eddie said --

MR. BECK:  Objection.  Vague and ambiguous.

THE WITNESS:  I'll repeat once again.  I don't know if I had another meeting or whether it was the same meeting.

MR. ANDERSON:  Okay.

BY MR. ANDERSON:

Q.  Was Julie at both of these meetings?

A.  Yes.

Q.  Okay.  We're not sure if it was a different meeting or the same meeting, but either way, Julie was there for it.

Correct?

A.  Yes.  Correct.

Q.  Was Jessica present?

A.  I don't recall her being there.

Q.  Was anybody else present?

A.  I don't think so.

Q.  So Eddy Robles said it wasn't fair that your coworkers would sometimes have to do your work because

Eva Vazquez Volume II
February 25, 2021

of your restriction.

Correct?

A. Yes. It's correct because he said that they had to work double.

Q. And it was because you couldn't lift heavy boxes?

A. Yes.

Q. Did he say anything else?

A. Nope.

Q. When he said these things, did he raise his voice?

A. It was in that conversation his voice was low and then it went up.

Q. Did you ever feel like he was yelling at you?

A. His tone of voice would change. I felt like sad, disillusioned.

Q. Because of the words he was saying.

Right?

A. Yes.

Q. Did he make fun of you or call you names?

MR. BECK: Objection. Calls for speculation. Vague.

THE WITNESS: No.

BY MR. ANDERSON:

Q. Did he do anything -- do you feel he did

Eva Vazquez Volume II
February 25, 2021

A.   Yes.   That I can recall.

Q.   Have you had any conversations with him since?

A.   No.

Q.   So at the end of the meeting, he said to you, I didn't know anything about this.

Correct?

A.   Once corporate got off the phone, yes.

Q.   And he said maybe if you had just come to me I could have helped.

Correct?

A.   Correct.

Q.   But because corporate's involved, there's nothing I can do.

Correct?

A.   Correct.

Q.   And that if your work restrictions change, you should come see him and he would see what he could do.

Correct?

A.   Correct.

Q.   Did you believe him?

A.   No.

Q.   You thought he was lying to you?

MR. BECK:   Objection.   Calls for speculation.

THE WITNESS:   Yes.

///

Eva Vazquez Volume II
February 25, 2021

BY MR. ANDERSON:

Q.  Why did you believe he was lying to you?

A.  By telling me that he was going to help me return to the store.

Q.  My question is why did you think he was lying to you?

A.  First of all, I think he was lying about the other managers having never told them anything about my problem.

Q.  Anything else that you thought he was lying about?

A.  And that he was going to help me to return to work at the same store.

Q.  Why did you think he was lying about that?

A.  Because corporate had already told him that I couldn't return to that store.

Q.  Any other reason you thought he was lying to you?

A.  No.  That's it.

Q.  So after the meeting, he was saying nice things to you, encouraging things.

Correct?

MR. BECK:  Objection.  Calls for speculation.

BY MR. ANDERSON:

Q.  Correct?

Eva Vazquez Volume II
February 25, 2021

A. Yes. Correct.

Q. But you didn't believe him.

Correct?

A. Correct.

Q. Have you now described to me all the communications you had with Allan relating to your disability?

A. Yes. Yes.

Q. Do you believe there's anything else Allan did to you that relates to your disability -- strike that. Let me ask you this: Is there anything you feel Allan did that bothered you relating to your disability that you haven't already described to me?

MR. BECK: Objection. Vague and ambiguous.

THE WITNESS: I was bothered because I felt sad, disability, they already knew what was happening. I didn't feel support because I told them I wanted to live like a normal person, like any other person who was disabled. To go have my operation I told him when he hung up, when corporate hung up. That I was already starting to have a lot of problems and that I had pain that went all the way to my vagina.

BY MR. ANDERSON:

Q. You told Allan this?

A. Yes.

conversation took place?  You said between 2016 and 2018.  I wonder if this helps you figure out where in that range that conversation happened?

A.  I don't remember.

Q.  Have you now described to me every conversation you had with Brenda that related to your disability?

A.  Yes.

Q.  Is there anything else you haven't described to me that Brenda did that you thought was mean?

A.  Yes.  I haven't told you --

Q.  There's something else?

A.  Yes.

Q.  What is that?

A.  She would address me with bad words.  I was working in rewrap and that she was in front.  And on one occasion, she came by and she said pick everything up and go help the stockers.  I turned to her and I kept looking at her.  She says to me, Don't you fucking understand and I kept looking at her.  Go help the stockers and that was an occasion.  Another occasion and she says to me, Pick up all my rewrap and to go help the stockers.

Once again -- and once again, I just stared at her, kept staring at her; what the fuck, don't you

understand.  Yes.  I understand you.  And I said, Why are you talking to me this way, and she said, How the fuck do you want me to talk to you, and I told her that I wanted for her to speak to me like an employer or boss -- to address herself like a boss to an employee. Well, how in the fuck am I talking to you, and then I told her, I'd like for you to talk to me like an employee, like a manager talks to an employee.  She says, What do you mean.  And that conversation -- it was Jesse Jimenez and the manager Salvador and Brenda. I don't know how to say it.  She's like thinking like what I am doing.  That one she talks that way.  And in my 18 years, I told her, No manager has ever spoken to me that way.  I don't know her.  She's not my friend. She's not anything.  She's just my manager.

Q.  You were saying this to Jessica at this point?

A.  No.  Four of us are there.

Q.  Okay.  And what else did Brenda say during that conversation with the four of you?

A.  I was telling them.  She kept quiet and Brenda left and Salvador left and Jessica said, Don't pay attention to her.  Jessica said, Don't pay attention to her; that's the way she talks.

Q.  Okay.  Any other occasions with Brenda that you haven't shared?

STATE OF CALIFORNIA         )
                            )
COUNTY OF ORANGE            )

          I, Angela M. Schubert, a Certified Shorthand Reporter, do hereby certify:

          That prior to being examined, the witness in the foregoing proceedings was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

          That said proceedings were taken remotely before me at the time and place therein set forth and were taken down by me in shorthand and thereafter transcribed into typewriting under my direction and supervision;

          I further certify that I am neither counsel for, nor related to, any party to said proceedings, not in anywise interested in the outcome thereof.

          In witness whereof, I have hereunto subscribed my name.


Dated:  March 1, 2021


_____

Angela M. Schubert
CSR No. 12027, CSR

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF LOS ANGELES

EVA VAZQUEZ,

                    Plaintiff,

        vs.                          CASE NO.
                                     21STCV03541

COSTCO WHOLESALE CORPORATION; EDDIE
ROBLES, an individual; ALLAN DOE, an
individual; JULIE DOE, an individual;
GUS DOE, an individual; and DOES 1
through 100,

                    Defendants.

_____

DEPOSITION OF EVA VAZQUEZ

VOLUME III

APPEARING REMOTELY FROM

LOS ANGELES COUNTY, CALIFORNIA

February 26, 2021

11:32 a.m.

REPORTED BY:
Jill Darland
CSR No. 6140

APPEARING REMOTELY FROM SAN DIEGO COUNTY, CALIFORNIA

Eva Vazquez Volume III
February 26, 2021

establish a privilege.

Are you maintaining your instruction not to answer that foundational fact question?

MR. BECK: I am.

BY MR. ANDERSON:

Q. One last question. Two more questions: First, when we talked about that EDD filing on March 4th, 2020, that Julie helped you with, do you recall that?

A. Yes.

Q. Have you filed or has anyone filed for you any other unemployment claims since then?

MR. BECK: Objection. Calls for legal conclusion, calls for speculation.

A. No.

MR. ANDERSON: So we're going to keep the deposition open. I've hit the hard stop time that I have today. I'll meet and confer with opposing counsel about any further deposition with you.

And Ms. Vazquez, I want to thank you for your time today and this week.

THE WITNESS: Thank you to you all. May I leave now?

MR. ANDERSON: You may. Tend to those dogs.

THE WITNESS: Yes. They're hungry.

THE VIDEO TECHNICIAN: Jill, do you need copy

# EXHIBIT D

**COSTCO WHOLESALE**

Sent via UPS and USPS

March 23, 2021

Eva Vazquez
15914 Lorca Rd
La Mirada, CA 90638

Dear Eva,

The purpose of this letter is to follow up with you regarding your leave of absence status and to invite you to attend another job assessment review meeting with us.

On March 3, 2020 we held a job assessment review meeting to determine if you could return to your position of Front End Assistant (full-time) or another position with or without accommodation. We reviewed the essential functions of your position and discussed possible accommodations that might allow you to perform those functions in a manner consistent with the restrictions provided by your health care provider. It was determined that you were unable to perform the essential functions of your position of Front End Assistant (full-time), with or without accommodations. We explored reassignment but concluded that it was not possible at the time. Accordingly, you were allowed to stay on a leave of absence in accordance with Company policy.

Since the job assessment review meeting, Costco looked for and sent you postings for jobs at your classification or below to consider for your possible reassignment. Specifically, Costco looked for postings from your location and Fullerton #418, La Habra #777, City of Industry #679, Huntington Beach #1110 added on June 15, 2020, Westminster Business center #943 added on June 24, 2020, Moreno Valley #455, #746 Lake Elsinore added on October 2, 2020, and Temecula #491 added November 2, 2020, the only locations you indicated you were interested in receiving postings from.

You have been on a leave of absence since March 3, 2020. Company policy provides for a leave of absence of up to one year. Although Costco may modify its leave of absence policy as a reasonable accommodation when appropriate, it does not provide for an indefinite leave.

At this time we would like to invite you to meet with us for another job assessment review meeting to discuss your possible return to work. As we did at the earlier meeting, we will assess whether you can return to work with or without accommodation. You are a critical part of this process, and we are very interested in your suggestions and ideas. Active participation on your part will help facilitate a positive outcome.

Prior to the job assessment review, we need to receive updated documentation from your health care provider describing your latest and current work restrictions, including their duration. A work restrictions form is enclosed to help your health care provider give us the requested information. (In providing documentation described above, please do not provide any family medical history or other genetic information)[1]

Eva Vazquez Volume III
February 26, 2021

STATE OF CALIFORNIA        )
                           )  SS
COUNTY OF SAN DIEGO        )


         I, JILL DARLAND, a Certified Shorthand

Reporter, do hereby certify:

         That prior to being examined, the witness in

the foregoing proceedings was duly sworn to testify to

the truth, the whole truth, and nothing but the truth;

         That said proceedings were taken before me at

the time and place therein set forth and were taken down

by me in shorthand and thereafter transcribed into

typewriting under my direction and supervision;

         I further certify that I am neither counsel

for, nor related to, any party to said proceedings, nor

in any way interested in the outcome thereof.

         In witness whereof, I have hereunto subscribed

my name.


Dated:    March 10, 2021


                     _____

                     Jill Darland
                     CSR No. 6140

If you believe another assessment review meeting would be productive in our efforts to return you to work, please contact me by April 10, 2021 to set up such a meeting.

If you are not released to work with or without restrictions, in order to determine the appropriate next steps, we need you to provide documentation from your health care provider stating the date by which it is anticipated that you will be released to work with or without restrictions or whether your release date is unknown. Please provide the documentation by April 10, 2021.

If you are released to work and do not wish to participate in the job assessment review meeting in an attempt to return to work, you have the option of resigning your employment.

If I do not hear from you by April 10, 2021, we will assume you do not want Costco to continue its efforts to attempt to return you to work, and do not want to explore the possibility of extending your leave.

I hope this information is clear and helpful. If you have any questions, concerns or information of which you feel Costco should be aware, please contact me directly at the number below. Otherwise, I hope to hear from you shortly to schedule a job assessment review meeting. Thank you.

Sincerely,

Yin Lawler
General Manager
(562) 668-5150

---

[1] The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

# EXHIBIT E

Company Investigator Report
COSTCO WHOLESALE CORPORATION

Case 2:21-cv-02563-PSG-JC     Document 12-2     Filed 03/31/21     Page 47 of 74     Page
ID #:320

3/26/2021 3:06:30 PM
Client ID: VAZQUEZ V. COSTCO

(3 Records)

Business Overview (1)
Associate Analytics Chart (1)
Miscellaneous
Report Section(s) with no Matches (9)

## Business Overview (1 Section)



| | |
|---|---|
| **Address:** | 999 LAKE DR<br>ISSAQUAH, WA 98027-8990 |
| **Phone Number:** | (425) 313-8100 |
| **Active Ticker Symbols:** | **COST (NASD)**<br>**COST (NASD)** |
| **Inactive Ticker Symbols:** | |
| **Location of Incorporation:** | CALIFORNIA |
| **Location of Incorporation:** | WASHINGTON |
| **Location of Incorporation:** | NEW HAMPSHIRE |
| **DUNS:** | 07-492-8418 |
| **FEIN:** | 911223280 |
| **FEIN:** | 752908979 |
| **FEIN:** | 330572969 |
| **FEIN:** | 211460423 |
| **FEIN:** | 211040408 |
| **FEIN:** | 953003013 |
| **FEIN:** | 211011866 |
| **FEIN:** | 943111710 |
| **FEIN:** | 911700298 |
| **FEIN:** | 911895843 |
| **FEIN:** | 911668476 |
| **FEIN:** | 912126359 |
| **FEIN:** | 601024674 |
| **FEIN:** | 911724345 |

Company Investigator Report
COSTCO WHOLESALE CORPORATION

3/26/2021 3:06:20 PM

Case 2:21-cv-02563-PSG-JC    Document 12-2    Filed 03/31/21    Page 48 of 74    Page
ID #:321

Client ID: VAZQUEZ V. COSTCO

| | |
|---|---|
| FEIN: | 901112995 |
| FEIN: | 211790245 |
| CIKs: | 0000734198<br>0000734198<br>0000909832<br>0000909832<br>0001393231<br>0001393231 |
| Business Description: | Costco Wholesale Corporation is engaged in the operation of membership warehouses in the United States and Puerto Rico, Canada, the United Kingdom, Mexico, Japan, Australia, Spain, and through its subsidiaries in Taiwan and Korea. As of August 28, 2016, the Company operated 715 warehouses across the world. The Company's average warehouse space is approximately 144,000 square feet. The Company's warehouses on average operate on a seven-day, 70-hour week. The Company offers merchandise in various categories, which include foods (including dry foods, packaged foods and groceries); sundries (including snack foods, candy, alcoholic and nonalcoholic beverages, and cleaning supplies); hardlines (including appliances, electronics, health and beauty aids, hardware, and garden and patio); fresh foods (including meat, produce, deli and bakery); softlines (including apparel and small appliances), and other (including gas stations and pharmacy). |
| Registered Agent: | THE CORPORATION COMPANY |
| Registered Agent: | CT CORPORATION SYSTEM |
| Registered Agent: | JOHN SULLIVAN |
| Registered Agent: | DEANNA NAKASHIMA |
| Registered Agent: | SECRETARY OF STATE |
| Registered Agent: | C T CORPORATION SYSTEM |
| Registered Agent: | PHILIP F. SULLIVAN |
| Registered Agent: | THE CORPORATION TRUST, INCORPORATED |
| Registered Agent: | CT CORPORATION SYSTEMS |
| Website Address: | www.costco.com |
| Current Outstanding Shares: | 442,533,785 |
| Fiscal Year End: | 09/02 |
| Latest Annual Financial Date: | 09/02/2018 |
| Filing Date: | 09/13/1991 |
| Filing Number: | F022515 |

## Associate Analytics Chart (1 Chart)

| Associates | Address | Address Type | Strength/Type of Association | Global Sanctions? | OFAC? |
|---|---|---|---|---|---|
| COSTCO WHOLESALE MEMBERSHIP, INC. | CT CORPORATION SYSTEM 3800 N C PHOENIX, AZ 85012 | | Shared Person Contact | No | No |
| COSTCO WHOLESALE CORPORATION | 15015 MAIN ST STE 104 BELLEVUE, WA 98007 | High Rise | Shared Person Contact | No | No |
| COSTCO HEALTH SOLUTIONS, INC | 999 LAKE DR ISSAQUAH, WA 98027 | High Rise | Shared Business Name | No | No |
| JOMOJO HAWAII LLC | | | Shared Person Contact | No | No |
| PCCW, INC. | | | Shared Person Contact | No | No |
| SPORTSNATION | 18120 SW LOWER BOONES FERRY RD PORTLAND, OR 97224 | Street | Shared Person Contact | No | No |
| COSTCO WHOLESALE | PO BOX 34535 | Post Office | | | |

# EXHIBIT F

Learn more about important COVID updates and Special Hours.

While Supplies Last        Online-Only        Warehouse Savings        Customer Service        US ∨



≡ Shop        Search        🔍        📍 Warehouses | 👤 My Account | 🛒 Cart

Delivery ZIP Code: **91403**   Change
Lists | Reorder

# Warehouses By State

| | |
|---|---|
| Alabama (4) | Montana (5) |
| Alaska (4) | Nebraska (3) |
| Arizona (18) | Nevada (8) |
| Arkansas | New Hampshire (1) |
| California (131) | New Jersey (20) |
| Colorado (14) | New Mexico (3) |
| Connecticut (7) | New York (19) |
| Delaware (1) | North Carolina (9) |
| District of Columbia (1) | North Dakota (2) |
| Florida (28) | Ohio (12) |
| Georgia (14) | Oklahoma (2) |
| Hawaii (7) | Oregon (13) |
| Idaho (7) | Pennsylvania (11) |
| Illinois (22) | Puerto Rico (4) |
| Indiana (7) | Rhode Island |
| Iowa (3) | South Carolina (6) |
| Kansas (3) | South Dakota (1) |
| Kentucky (4) | Tennessee (5) |
| Louisiana (3) | Texas (33) |
| Maine | Utah (12) |
| Maryland (11) | Vermont (1) |
| Massachusetts (6) | Virginia (17) |
| Michigan (16) | Washington (32) |
| Minnesota (12) | West Virginia |
| Mississippi (1) | Wisconsin (9) |
| Missouri (6) | Wyoming |

Feedback

# EXHIBIT G

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Adam Reisner, Esq. SBN 204351 / Tessa King, Esq. SBN 251408<br>Reisner & King LLP<br>15303 Ventura Boulevard, Suite 1260<br>Sherman Oaks, CA 91403<br>TELEPHONE NO.: 818-981-0901    FAX NO. *(Optional)*: 818-981-0902<br>E–MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Plaintiff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 111 North Hills St.
MAILING ADDRESS: 111 North Hills St.
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

| PLAINTIFF/PETITIONER: Eva Vazquez | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Costco Wholesale Corporation; Eddie Robles, an individ | 21STCV03541 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package, and Voluntary Efficient Litigation Stipulations (with forms)
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross Complaint
   f. ☑ Other: Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Assignment – Unlimited Civil Case; First Amended General Order

3. a. Party served (specify name of party as shown on documents served):
      Eddie Robles
   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
      Costco at 5401 Katella Avenue, Cypress 90720
5. I served the party *(check proper box)*
   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on *(date):*                        (2) at *(time):*
   b. ☑ **by substituted service.** On *(date):* 2/3/21        at *(time):* 12:03pm I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*
      Marlene Soto - Supervisor (W F 45 5'5" 235 Brown hair)
      (1) ☑ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) ☑ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* 2/4/21      from *(city):* Los Angeles        **or** ☐ a declaration of mailing is attached.
      (5) ☑ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

| PLAINTIFF/PETITIONER: Eva Vazquez | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Costco Wholesale Corporation; Eddie Robles, an inc | 21STCV03541 |

5.   c.   ☐   **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):*                                                    (2) from *(city):*

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

(4) ☐ to an address outside California with return receipt requested.  (Code Civ. Proc., § 415.40.)

d.   ☐   **by other means** *(specify means of service and authorizing code section):*

☐  Additional page describing service is attached.

6.   The "Notice to the Person Served" (on the summons) was completed as follows:
a.   ☑   as an individual defendant.
b.   ☐   as the person sued under the fictitious name of *(specify):*
c.   ☐   as occupant.
d.   ☐   On behalf of *(specify):*
under the following Code of Civil Procedure section:

☐ 416.10 (corporation)               ☐ 415.95 (business organization, form unknown)
☐ 416.20 (defunct corporation)       ☐ 416.60 (minor)
☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)
☐ 416.40 (association or partnership)   ☐ 416.90 (authorized person)
☐ 416.50 (public entity)             ☐ 415.46 (occupant)
                                     ☐ other:

7.   **Person who served papers**
a.   Name:   George Sano
b.   Address: Horizon Investigation Inc. - 11693 San Vicente Blvd., #449, Los Angeles, CA 90049 - CA PI 24731
c.   Telephone number: 424-835-0035
d.   **The fee** for service was: $ 0.00
e.   I am:

(1) ☐ not a registered California process server.
(2) ☑ exempt from registration under Business and Professions Code section 22350(b).
(3) ☐ a registered California process server:
(i) ☐ owner  ☐ employee  ☐ independent contractor.
(ii) Registration No.:
(iii) County:

8.   ☑   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9.   ☐   **I am a California sheriff or marshal and I** certify that the foregoing is true and correct.

Date: 2/3/21

/S/ George Sano PSC2623
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ /S/ *George Sano*
_____
(SIGNATURE )

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Adam Reisner, Esq. SBN 204351 / Tessa King, Esq. SBN 251408<br>Reisner & King LLP<br>15303 Ventura Boulevard, Suite 1260<br>Sherman Oaks, CA 91403<br><br>TELEPHONE NO.: 818-981-0901    FAX NO. *(Optional):* 818-981-0902<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiff | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hills St.
MAILING ADDRESS: 111 North Hills St.
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District

PLAINTIFF/PETITIONER: Eva Vazquez

DEFENDANT/RESPONDENT: Costco Wholesale Corporation; Eddie Robles, an individ

| DECLARATION | CASE NUMBER:<br>21STCV03541 |
|---|---|

Declaration of diligence regarding service of process. I am and was on the dates herein mentioned over the age of 18 years and not a party to the action. My business address is Horizon Investigation Inc. - 11693 San Vicente Blvd., #449, Los Angeles, CA 90049.

Documents: Summons; Complaint; Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Assignment – Unlimited Civil Case; First Amended General Order; Alternative Dispute Resolution (ADR) package, and Voluntary Efficient Litigation Stipulations (with forms)

Subject:  Eddie Robles
Address: Costco at 5401 Katella Avenue, Cypress 90720

Dates / Times attempted:          Reason for non-service:

1/30/21 at 10:25 AM.          Not in.  Could not tell us his schedule.
2/1/21 at 5:50 PM.          Not in.  Could not tel lus his schedule.
2/3/21 at 12:03PM          Not in.  Sub-served  Marlene Soto - Supervisor (W F 45 5'5" 235 Brown hair).

I declare under the laws of the State of California and penalty of perjury that the foregoing is true and correct to the best of my knowledge.

2/3/21          /S/ George Sano PSC2623          /S/ *George Sano*

DATE          (TYPE OR PRINT NAME)          (SIGNATURE OF DECLARANT)

☐ Attorney for  ☐ Plaintiff  ☐ Petitioner  ☐ Defendant
☐ Respondent  ☑ Other *(Specify):* CA PI 24731

**DECLARATION**          Page 1 of 2

# EXHIBIT H

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
TRAVIS J. ANDERSON, Cal. Bar No. 265540
GABRIELLA R. ALBRIGHT, Cal. Bar No. 326201
12275 El Camino Real, Suite 100
San Diego, California 92130-4092
Telephone:    858.720.8900
Facsimile:    858.509.3691
E mail        tanderson@sheppardmullin.com
              galbright@sheppardmullin.com

Attorneys for COSTCO WHOLESALE CORPORATION

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| EVA VAZQUEZ,<br><br>            Plaintiff,<br><br>      v.<br><br>COSTCO WHOLESALE CORPORATION; EDDIE ROBLES, an individual; ALLAN DOE, an individual; JULIE DOE, an individual; GUS DOE, an individual; and DOES 1 through 100,<br><br>            Defendants. | Case No. 21STCV03541<br><br>**NOTICE OF DEPOSITION TO PLAINTIFF EVA VAZQUEZ AND REQUEST FOR PRODUCTION OF DOCUMENTS**<br><br>**DATE:**   **February 24, 2021**<br>**TIME:**    **9:00 a.m.**<br>**PLACE:**  **12275 El Camino Real**<br>              **Suite 200**<br>              **San Diego, CA 92130-4092** |

SMRH:4844-5621-2187.1
NOTICE OF DEPOSITION OF PLAINTIFF EVA VAZQUEZ AND REQUEST FOR PRODUCTION OF DOCUMENTS

TO PLAINTIFF EVA VAZQUEZ AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Costco Wholesale Corporation ("Defendant") shall take the deposition of Plaintiff Eva Vazquez ("Plaintiff") on February 24, 2021, commencing at 9:00 a.m., at Sheppard Mullin Richter & Hampton LLP, 12275 El Camino Real, Suite 200, San Diego, CA 92130.

PLEASE TAKE FURTHER NOTICE that the deposition shall be taken before a qualified, certified shorthand reporter or other officer authorized to administer oaths and may continue day to day thereafter until completed.  Defendant expressly reserves the right to continue the deposition at a later date if the deposition is not completed on the date set forth above.  Pursuant to C.C.P. § 2025.220(a)(5), Defendant gives notice that it also intends to record the testimony by videotape and by instant visual display.

Please note that due to the current situation regarding COVID-19, the deposition may likely take place via web-based videoconference. Please take notice that the court reporter may conduct the deposition from a remote location as if the reporter was physically present in the room with you.

NOTICE IS FURTHER GIVEN that Plaintiff is requested to bring to the deposition the following documents and things described below:

## DEFINITIONS AND INSTRUCTIONS

1.  These Requests are intended to cover all documents in Plaintiff's possession or subject to Plaintiff's custody or control, whether the documents are located in Plaintiff's office, home or any other storage place maintained or utilized by Plaintiff. Also, these Requests cover all documents in Plaintiff's possession or subject to Plaintiff's custody or control, whether documents are held by Plaintiff or by Plaintiff's investigators,

-2-

attorneys, accountants or other agents. This includes any documents or electronic records stored on Plaintiff's personal computer or other electronic storage device, or the computers or electronic storage devices of Plaintiff's investigators, attorneys, accountants or other agents.

2.      As used in these Requests, the term "DOCUMENT" means by way of example and without limitation, the following items, whether permanently recorded or reproduced by any mechanical process or written or produced by hand: agreements, contracts, instruments, financial documents, communications, state and federal governmental hearings and reports, correspondence, telegrams, memoranda, summaries and records of telephone conversations, summaries and records of personal conversations and interviews, diaries, calendars, notes, notices, invoices, graphs, reports, notebooks, note charts, plans, drawings, sketches, maps, summaries and records of meetings and conferences, summaries and reports of investigations and negotiations, opinions and reports of consultants, photographs, motion picture film, micro film, videotape, tape recordings, brochures, pamphlets, advertising, circulations, press releases, drafts, letters, computer files or memory devices of any kind, any marginal comments appearing on any documents and any other writings (as defined in Cal. Evid. Code § 250) or information relevant to the requests set forth below. The term "DOCUMENTS" shall also include any and all computerized and/or electronic files or records, including but not limited to emails, text messages, instant messaging, and social media postings.

3.      As used in these Requests, the term "COMMUNICATIONS" refers to any DOCUMENT delivered to or sent from one person or entity to another, including but not limited to emails, text messages, social media, secure file transfer, letters, faxes, memoranda, notes, etc. in their native format.

4.      As used in these Requests, the terms "RELATING TO," "RELATE TO," "RELATING," or any variant thereof, mean constituting, containing, summarizing, memorializing, evidencing, discussing, referring to, or in any other way being relevant to the matter therein.

-3-

Case No. 21STCV03541

NOTICE OF DEPOSITION OF PLAINTIFF EVA VAZQUEZ AND REQUEST FOR PRODUCTION OF DOCUMENTS

5.   In these Requests, the terms "AND" and "OR" have both conjunctive and disjunctive meanings.

6.   In these Requests, the use of the singular includes the plural and the use of the plural includes the singular.

7.   As used in these Requests, the terms "YOU," "YOUR," and "PLAINTIFF" refer to Plaintiff Eva Vazquez and, as applicable in context, her agents, partners, employees, attorneys, accountants, consultants, investigators and any and all other persons acting on behalf of PLAINTIFF.

8.   As used in these Requests, the term "COSTCO" refers to Defendant Costco Wholesale Corporation.

9.   As used in these Requests, the term "COMPLAINT" refers to the Complaint filed by PLAINTIFF against COSTCO and others in Los Angeles Superior Court, case no. 21STCV03541.

10.   As used in these Requests, the term "DEFENDANTS" shall refer, collectively, to all named Defendants in the COMPLAINT filed by PLAINTIFF, which includes: Costco Wholesale Corporation, Eddie Robles, Allan Doe, Julie Doe, and Gus Doe.

11.   In the event that any document, or any portion of any document, within the scope of these Requests is withheld from production by virtue of a claim of privilege or for any other reason, PLAINTIFF is requested to provide a list identifying each document so withheld, together with the following:

(a)   a statement of the basis for any claim of privilege or other ground of non-disclosure; and

(b)   a description of the document including:

(i)   the type of document (e.g., letter, memo, etc.);

(ii)   its date;

(iii)   its number of pages, attachments, and appendices;

(iv)   the name(s) of its author(s) or preparer(s) and an

-4-

SMRH:4844-5621-2187.1

identification by employment and title of each such person;

    (v)    the name(s) of each person to whom the document, or a copy thereof, was sent, shown or made accessible, together with an identification by employment and title of each such person; and

    (vi)    the subject matter of the document.

12.    In producing the documents requested herein, PLAINTIFF is required to furnish all responsive documents known or available to PLAINTIFF by means of PLAINTIFF's custody, possession, or control, or otherwise available to PLAINTIFF, including documents from the files and records of PLAINTIFF's agents, attorneys, other representatives, and anyone purporting or actually authorized to act on PLAINTIFF's behalf at any time, whether or not the documents are possessed by PLAINTIFF directly.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS that RELATE TO the first cause of action in the COMPLAINT.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS that RELATE TO the second cause of action in the COMPLAINT.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS that RELATE TO the third cause of action in the COMPLAINT.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS that RELATE TO the fourth cause of action in the COMPLAINT.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS that RELATE TO the fifth cause of action in the COMPLAINT.

-5-

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS that RELATE TO the sixth cause of action in the COMPLAINT.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS that RELATE TO the seventh cause of action in the COMPLAINT.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS that RELATE TO the eighth cause of action in the COMPLAINT.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS that RELATE TO any allegation in the COMPLAINT.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS that RELATE TO YOUR work performance during YOUR alleged employment with COSTCO, including performance reviews, evaluations, or summaries.

**REQUEST FOR PRODUCTION NO. 11:**

Any and all email, electronic messages, or text messages sent, received, or maintained by YOU concerning any allegation in the COMPLAINT, including but not limited to those sent to YOUR personal email addresses.

**REQUEST FOR PRODUCTION NO. 12:**

All COMMUNICATIONS either by or to YOU concerning any aspect of YOUR employment with COSTCO through any social media account (e.g., Facebook, Instagram, SnapChat, LinkedIn, Twitter, Slack, Reddit, Tumblr).

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS that RELATE TO any and all complaints that YOU made to COSTCO, including but not limited to, complaints about discrimination, harassment, retaliation, failure to engage in a good faith interactive process, and/or failure to accommodate.

**REQUEST FOR PRODUCTION NO. 14:**

All DOCUMENTS that RELATE TO any adverse employment actions which YOU suffered during YOUR employment with COSTCO.

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS that RELATE TO YOUR allegation in YOUR COMPLAINT that DEFENDANTS failed to investigate the alleged harassment, discrimination, and/or retaliation that YOU suffered during YOUR employment with COSTCO.

**REQUEST FOR PRODUCTION NO. 16:**

All DOCUMENTS that RELATE TO any protected activity that YOU engaged in during YOUR employment with COSTCO that YOU contend YOU were retaliated against for having engaged in.

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS that RELATE TO any requests for accommodations which YOU made to COSTCO.

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS that RELATE TO any work restrictions placed on YOU by any doctor or health care provider relative to YOUR employment with COSTCO.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS that RELATE TO any disability which YOU allege YOU have experienced during YOUR employment with COSTCO.

**REQUEST FOR PRODUCTION NO. 20:**

All DOCUMENTS that RELATE TO any treatment YOU have received for any disability which YOU allege YOU have experienced during YOUR employment with COSTCO.

**REQUEST FOR PRODUCTION NO. 21:**

All COMMUNICATIONS with DEFENDANTS RELATING TO any disability which YOU allege YOU have experienced during YOUR employment with COSTCO.

-7-

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS that RELATE TO any complaints or charges that YOU have filed with any government agency, including but not limited to the California Department of Fair Employment and Housing ("DFEH") and the U.S. Equal Employment Opportunity Commission, regarding YOUR employment with COSTCO.

**REQUEST FOR PRODUCTION NO. 23:**

All COMMUNICATIONS between the Social Security Administration and YOU.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS and COMMUNICATIONS that RELATE TO Eddie Robles.

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS and COMMUNICATIONS that RELATE TO Allan Doe.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS and COMMUNICATIONS that RELATE TO Julie Doe.

**REQUEST FOR PRODUCTION NO. 27:**

All DOCUMENTS and COMMUNICATIONS that RELATE TO Gus Doe.

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS that RELATE TO any employment YOU engaged in during YOUR employment with COSTCO, but with employers other than COSTCO.

**REQUEST FOR PRODUCTION NO. NO. 29:**

All DOCUMENTS that RELATE TO the reasons YOU separated from any employment before the time YOU worked for COSTCO.

**REQUEST FOR PRODUCTION NO. 30:**

All DOCUMENTS that RELATE TO any efforts that YOU took to obtain employment from any person or entity other than COSTCO since January 2015, including but not limited to resumes, job applications, wanted ads, interview notes, job offers, job notices, and letters from or to prospective employers.

**REQUEST FOR PRODUCTION NO. 31:**

All resumes or curriculum vitae pertaining to YOU.

-8-

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS that RELATE TO YOUR allegation in YOUR COMPLAINT that YOU suffered compensatory damages due to DEFENDANTS' alleged conduct.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS that RELATE TO any special damages (past, present, or future) claimed by YOU against DEFENDANTS.

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS that RELATE TO any economic losses (past, present, or future) claimed by YOU against DEFENDANTS including, but not limited to, loss of earnings, bonuses, deferred compensation, and other employment benefits.

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS that RELATE TO any noneconomic damages claimed by YOU against DEFENDANTS, including, but not limited to, damages resulting from embarrassment, humiliation, anxiety, emotional distress, physical pain and mental anguish.

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS that RELATE TO any medical expenses claimed by YOU against DEFENDANTS.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS that RELATE TO YOUR allegation in YOUR COMPLAINT that YOU suffered emotional distress due to DEFENDANTS' alleged conduct.

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS that RELATE TO YOUR allegation in YOUR COMPLAINT that YOU are entitled to recover punitive damages due to DEFENDANTS' alleged conduct.

**REQUEST FOR PRODUCTION NO. 39:**

All DOCUMENTS that RELATE TO YOUR allegation in YOUR COMPLAINT that an officer, director, or managing agent of COSTCO authorized or ratified the alleged conduct about which YOU complain in YOUR COMPLAINT.

-9-                                                    Case No. 21STCV03541

SMRH:4844-5621-2187.1                NOTICE OF DEPOSITION OF PLAINTIFF EVA VAZQUEZ AND REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 40:**

All journal entries, diaries, notes, or other personal recordings that RELATE TO any of the allegations in YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 41:**

All DOCUMENTS RELATING TO YOUR contention that "[a]s a direct and legal result of the acts and omissions of Defendants, and DOES 1 through 100, Plaintiff was rendered sick, sore, lame, disabled and/or disordered, both internally and/or externally, and/or suffered, among other things, numerous internal injuries, severe fright, shock, pain, discomfort and/or anxiety," as alleged in paragraph 22 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 42:**

All DOCUMENTS RELATING TO YOUR contention that "Plaintiff was a person with an actual, perceived, potentially disabling, and/or potentially disabling in the future physical/mental disability(s) including, but not limited to: back disabilities, depression and anxiety, among other related conditions and/or disabilities," as alleged in paragraph 30 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS RELATING TO YOUR contention that "Plaintiff's impairments affect her musculoskeletal body system and ability to perform major life activities, such as working," as alleged in paragraph 32 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS RELATING TO YOUR contention that "[a]t all times relevant herein, Plaintiff was qualified for and/or competently performed the position(s) held throughout her employment with Defendant Costco," as alleged in paragraph 34 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 45:**

All DOCUMENTS RELATING TO YOUR contention that "Plaintiff notified her supervisors and managers, as well as the Human Resources Department, of her disabilities and requested reasonable accommodations," as alleged in paragraph 31 of YOUR

-10-

COMPLAINT.

**REQUEST FOR PRODUCTION NO. 46:**

All DOCUMENTS RELATING TO YOUR contention that DEFENDANTS "retaliated against Plaintiff as a result of Plaintiff asserting her legal rights and/or complaining about and/or protesting against the disability harassment and discrimination Plaintiff was subjected to," as alleged in paragraph 53 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS RELATING TO YOUR contention that DEFENDANTS "retaliated against Plaintiff, due to and substantially motivated by Plaintiff's actual/perceived disability(s), requesting accommodations, or protected finite leave, and/or due to Plaintiff engaging in the aforesaid legally protected activities (complaints/protests)," as alleged in paragraph 55 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 48:**

All DOCUMENTS RELATING TO YOUR contention that DEFENDANTS "were substantially motivated by Plaintiff's actual/perceived disabilities, need for accommodations, need for legally protected medical leave, and/or aforesaid legally protected activities (complaints/protests)," as alleged in paragraph 56 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 49:**

All DOCUMENTS RELATING TO YOUR contention that "Defendant Costco failed to engage in a good-faith interactive process with Plaintiff to determine whether it would be possible to provide reasonable accommodations," as alleged in paragraph 72 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 50:**

All DOCUMENTS RELATING TO YOUR contention that "Plaintiff informed Defendant Costco and its relevant Supervisors of her disability, restrictions, need for accommodations, and need/potential need for protected medical leave," as alleged in paragraph 124 of YOUR COMPLAINT.

-11-

Case No. 21STCV03541

SMRH:4844-5621-2187.1

NOTICE OF DEPOSITION OF PLAINTIFF EVA VAZQUEZ AND REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 51:**

All DOCUMENTS RELATING TO YOUR contention that DEFENDANTS "retaliated against Plaintiff for blowing the whistle/complaining about/protesting against its unlawful activities, including but not limited to actual/perceived disability, age, and sex/gender harassment, discrimination, and retaliation, where Plaintiff had reasonable cause to believe Plaintiff's employer was violating the law," as alleged in paragraph 138 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 52:**

All DOCUMENTS RELATING TO YOUR contention that "[i]n August 2019, Plaintiff sustained disabilities to her feet and proceeded to take legally protected medical leave until October 2019," as alleged in paragraphs 14, 36, 54, 77, 99, and 140 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 53:**

All DOCUMENTS RELATING TO YOUR contention that "[a]fter returning to work, while expressing anger and frustration, Defendant Gus Doe began to purposefully ignore and distance himself from Plaintiff as well leer [*sic*] and stare at her on a severe and/or pervasive basis," as alleged in paragraphs 14, 36, 55, 99, 125, and 141 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 54:**

All DOCUMENTS RELATING TO YOUR contention that "in or around November 2019, Plaintiff took further legally protected medical leave to after [*sic*] suffering disabilities to her hips and returned approximately three weeks later with a restriction of no sweeping; Plaintiff was able to work with these restrictions," as alleged in paragraphs 14, 36, 54, 77, 99, 125, and 140 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 55:**

All DOCUMENTS RELATING TO YOUR contention that "Manager Brenda Doe, on a severe and/or pervasive basis would demean and swear at Plaintiff, saying comments like, 'What the fuck are you doing' and 'stop picking the smallest fucking broom,' among

-12-

other similar comments due in substantial part to Plaintiff's disabilities," as alleged in paragraphs 14, 36, 55, 77, 99, and 125 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 56:**

All DOCUMENTS RELATING TO YOUR contention that "despite having knowledge of Plaintiff's disabilities, Manager Brenda Doe would consistently assign Plaintiff heavy work, even though Plaintiff complained that work was too hard on her disabilities," as alleged in paragraphs 14, 36, 77, 99, and 125 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 57:**

All DOCUMENTS RELATING TO YOUR contention that "Manager Brenda Doe, would consistently demand to see Plaintiff's doctor's notes and state, 'without a doctor's note, it does not matter if your back hurts,'" as alleged in paragraphs 14, 36, 55, 77, 99, 125, and 141 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 58:**

All DOCUMENTS RELATING TO YOUR contention that YOU "discussed [YOUR] sweeping restriction in or around January 2020 with Human Resources Representative, Defendant Julie Doe," as alleged in paragraphs 14, 36, 54, 77, 99, 125, and 140 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 59:**

All DOCUMENTS RELATING TO YOUR contention that "rather than engage in the good faith interactive process and assess the nature and extent of Plaintiff's disabilities, Defendant Gus Doe angrily questioned her restrictions and stated: 'Why can't you sweep? You have restrictions for sweeping?' among other similar comments," as alleged in paragraphs 14, 36, 55, 77, 125, and 141 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 60:**

All DOCUMENTS RELATING TO YOUR contention that "Plaintiff attempted to transfer to the optical department but was denied by Defendant Robles who stated she needed a special license, which is untrue. Plaintiff was aware of at least three individuals

-13-

working in Optical without the license," as alleged in paragraphs 14, 36, 55, 99, 125, and 141 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 61:**

All DOCUMENTS RELATING TO YOUR contention that "on or about February 15, 2020, Defendants called Plaintiff into a meeting and unlawfully tried to coerce Plaintiff to remove her restrictions by her doctor, insisting she be 100% healed to work her job," as alleged in paragraphs 14, 36, 55, 77, 99, 125, and 141 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 62:**

All DOCUMENTS RELATING TO YOUR contention that "Defendant Robles threateningly told Plaintiff, 'You need to take this paper to the doctor and show him this paper, if you want to work, you need to have the restrictions removed. [It] is not fair for other people to do their day-to-day tasks and that you need assistance or are exempt from certain tasks due to your restrictions,'" as alleged in paragraphs 14, 36, 55, 77, 99, 125, and 141 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 63:**

All DOCUMENTS RELATING TO YOUR contention that Defendant Allan Doe stated: "We have no job for you because you have restrictions. Go have your restrictions removed," as alleged in paragraphs 14, 36, 55, 77, 99, 125, and 141 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 64:**

All DOCUMENTS RELATING TO YOUR contention that "[o]n or about March 2, 2020, Plaintiff took protected legal action by wearing a mask and gloves at work in light of the COVID-19 pandemic, which was recommended by her doctor due to her weak immune system," as alleged in paragraphs 14, 36, 54, 77, 99, and 140 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 65:**

All DOCUMENTS RELATING TO YOUR contention that "Defendant Gus Doe berated Plaintiff for wearing a mask and gloves by stating, 'Are you sick? No. Then you can't wear a mask. The only people allowed to wear a mask are the sick people.'

-14-

Defendant Gus Doe refused to allow Plaintiff to wear the mask," as alleged in paragraphs 14, 36, 55, and 99 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 66:**

All DOCUMENTS RELATING TO YOUR contention that "Plaintiff protested to be able to wear the mask to Defendant Gus Doe, telling him, 'I need it for my health, my defenses are slow,'" as alleged in paragraphs 54 and 140 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 67:**

All DOCUMENTS RELATING TO YOUR contention that Defendant Gus Doe refused to let YOU wear a mask despite the ongoing COVID-19 pandemic, as alleged in paragraph 141 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 68:**

All DOCUMENTS RELATING TO YOUR contention that YOU were "forced out on leave of absence beginning March 3, 2020, when Defendants falsely determined that she was unable to perform the essential functions of a Front-End Assistant, even though she was able to work with reasonable accommodations," as alleged in paragraphs 14, 36, 55, 77, 99, 125, and 141 of YOUR COMPLAINT

**REQUEST FOR PRODUCTION NO. 69:**

All DOCUMENTS RELATING TO YOUR contention that "all Plaintiffs supervisors were happy with her work," as alleged in paragraphs 14, 36, 55, 99, 125, and 141 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 70:**

All DOCUMENTS RELATING TO YOUR contention that "Defendant Allan Doe told Plaintiff that there was no job for her at this Costco because of her restrictions," as alleged in paragraphs 14, 36, 55, 99, 125, and 141 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 71:**

All DOCUMENTS RELATING TO YOUR contention that "when Plaintiff mentioned the reasonable accommodations she could still do, such as working the doors, Defendant Allan Doe stated she would have to push carts despite never pushing carts

-15-    Case No. 21STCV03541

previously," as alleged in paragraphs 14, 36, 55, 77, 99, 125, and 141 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 72:**

All DOCUMENTS RELATING TO YOUR contention that "[d]espite Plaintiffs ability to continue working with the same reasonable accommodations as she had been since January 2020, Plaintiff was forced out on leave indefinitely by Defendants, due in substantial part to her disabilities and need for accommodation," as alleged in paragraphs 14, 36, 55, and 77 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 73:**

All DOCUMENTS that RELATE TO YOUR alleged meeting with DEFENDANTS on March 3, 2020, as alleged in paragraphs 14, 55, 77, 99, and 141 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 74:**

All DOCUMENTS RELATING TO YOUR contention that DEFENDANTS stated: "you are not terminated but you cannot come back to work at this Costco. If you change/modify the restrictions, maybe we can bring you back at this store," as alleged in paragraphs 14, 55, 77, 99, and 141 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 75:**

All DOCUMENTS RELATING TO YOUR contention that "Defendants failed and/or refused to investigate Plaintiff's complaints and take appropriate remedial actions," as alleged in paragraphs 14, 36, 77, 125, and 141 of YOUR COMPLAINT.

**REQUEST FOR PRODUCTION NO. 76:**

All DOCUMENTS RELATING TO YOUR contention that "Defendant deviated from its own policies and procedures, supporting a public interest in Plaintiffs seeking Defendants to comply with their own policies," as alleged in paragraph 306 of YOUR COMPLAINT.

-16-

Case No. 21STCV03541

**<u>REQUEST FOR PRODUCTION NO. 77</u>:**

All DOCUMENTS RELATING TO YOUR contention that "Defendant Costco placed Plaintiff on indefinite leave from Plaintiff's employment," as alleged in paragraph 147 of YOUR COMPLAINT.

Dated:  February 10, 2021

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____

TRAVIS J. ANDERSON
GABRIELLA R. ALBRIGHT
Attorneys for Defendant
COSTCO WHOLESALE CORPORATION

Case No. 21STCV03541

SMRH:4844-5621-2187.1

NOTICE OF DEPOSITION OF PLAINTIFF EVA VAZQUEZ AND REQUEST FOR PRODUCTION OF DOCUMENTS

## PROOF OF SERVICE

*Eva Vazquez v. Costco Wholesale Corporation, et al.*

**LASC Case No. 21STCV03541**

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

At the time of service, I was over 18 years of age and **not a party to this action.** I am employed in the County of San Diego, State of California. My business address is 12275 El Camino Real, Suite 100, San Diego, CA 92130-4092.

On February 10, 2021, I served true copies of the following document(s) described as **NOTICE OF DEPOSITION TO PLAINTIFF EVA VAZQUEZ AND REQUEST FOR PRODUCTION OF DOCUMENTS** on the interested parties in this action as follows:

**SERVICE LIST**

Adam Reisner, Esq.                          *Attorneys for Plaintiff*
Tessa King, Esq.                            *EVA VAZQUEZ*
Travis Beck, Esq.
Reisner & King LLP
15303 Ventura Blvd., Suite 1260
Sherman Oaks, CA  91403
adam@reisnerlaw.com
tessa@reisnerlaw.com
travis@reisnerlaw.com

**BY MESSENGER SERVICE:** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed on the Service List and providing them to a professional messenger service for service.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 10, 2021, at San Diego, California.


                                            _____
                                            */s/ Rosa Vernetti*
                                            Rosa Vernetti

SMRH:4834-3849-3659.1                       -1-                              PROOF OF SERVICE

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am a resident of the State of California; I am over the age of 18 years and not a party to the within action; my business address is 15303 Ventura Blvd, Suite 1260, Sherman Oaks, CA 91403.

On **March 31, 2021**, I served true copies of the following document(s) described **DECLARATION OF ADAM REISNER, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND** on the following interested parties in this action:

Travis J. Anderson, Esq.
Gabriella R. Albright, Esq.
Sheppard Mullin Richter & Hampton LLP
12275 El Camino Real, Suite 100
San Diego, California 92130
tanderson@sheppardmullin.com
galbright@sheppardmullin.com
*Attorneys for Defendants*

**X   BY ELECTRONIC FILING:** I hereby certify that on March 31, 2021, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic system to all parties indicated on the electronic filing receipt.

**X   BY MAIL**: I enclosed the document in a sealed envelope/package addressed to the addressees designated and placed it for mailing, following our ordinary business practices. I am readily familiar with the mailing practice of my place of employment in respect to the collection and processing of correspondence and pleadings for mailing.  It is deposited with the United States Postal Service on that same day in the ordinary course of business with postage fully prepaid.

**X   (FEDERAL)  I declare under the penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.**

Executed on **March 31, 2021**, at Sherman Oaks, California.

/s/ Lorina Jasso

Lorina Jasso